AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**Black LG cellphone with<br>IMEI 355041-61-706866-8** | )<br>)<br>)<br>)<br>)<br>) |

FILED

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

Case No.   22-MR-454

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A.

located in the _____ District of _____ **New Mexico** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841(a)(1), 846,<br>18 U.S.C. 922(g)(1) and 924 | PWITD, conspiracy to PWITD, and possession of a firearm and ammunition by a<br>convicted felon. |

The application is based on these facts:

**See attached affidavit**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

**Jordan Spaeth, FBI Special Agent**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date:  _____ 03/17/2022 _____

_____

City and state:  **Albuquerque, New Mexico**

**B. Paul Briones, United States Magistrate Judge**
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### INTRODUCTION

1.     I, Jordan Spaeth, Special Agent of the Federal Bureau of Investigation ("FBI"), being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, described as a black LG cellphone, with International Mobile Equipment Identity (IMEI) 355041-61-706866-8, also described in Attachment A ("TARGET PHONE"), which is currently in the lawful custody of the Federal Bureau of Investigation ("FBI"), and the extraction from that property of electronically stored information described in Attachment B. The TARGET PHONE was seized from Carlos SAUCEDO on March 4, 2022.

2.     The TARGET PHONE was seized by the FBI and collected as evidence pursuant to federal search warrant 22-MR-354, which was executed on March 4, 2022. The TARGET PHONE is currently located at the FBI Albuquerque Field Office, 4200 Luecking Park Avenue Northeast, Albuquerque, New Mexico. In my training and experience I know that the TARGET PHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET PHONE first came into the possession of the FBI.

3.     The applied-for warrant would authorize the forensic examination of the TARGET PHONE for the purpose of identifying electronically stored data particularly described in Attachment B. This application seeks a warrant authorizing law enforcement officers working this investigation to search all responsive records and information associated with the TARGET PHONE for evidence pertaining to violations of:

      a.   21 U.S.C. § 841(a)(1).- Possession with intent to distribute a controlled substance and distribution of a controlled substance;

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

    b.  21 U.S.C. § 846 - Conspiracy to possess with intent to distribute a controlled substance or conspiracy to distribute a controlled substance; and

    c.  18 U.S.C. §§ 922(g)(1) and 924 – Possession of a firearm and ammunition by a conviction felon.

4.      The specific evidence being sought has been detailed within Attachment B, which has been attached hereto and incorporated herein. This affidavit does not set forth all of my knowledge or summarize all of the investigative efforts in this matter; however, the affidavit sets forth only the facts that support probable cause to search the TARGET PHONE, as well as relevant background information. Any observations referenced herein that I did not personally witness were relayed to me in oral or written reports by members of the investigative team, who assisted during this investigation, which remains open.

5.      During my investigation, I have developed information I believe to be reliable from the following sources:

    a.  Information from the New Mexico State Police ("NMSP"), New Mexico Corrections Department ("NMCD"), Bernalillo County Metropolitan Detention Center ("MDC") and other law enforcement or corrections officials (also referred to herein as "agents"), including oral and written reports;

    b.  Results of physical surveillance;

    c.  Records from the FBI National Crime Information Center ("NCIC"), New Mexico Courts, and the New Mexico Motor Vehicle Division.

6.      Where I refer to conversations herein, they are related in substance and, in part, based on conversations between fellow agents, task force officers, other law enforcement personnel, or confidential human sources that assisted law enforcement. Any observations

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

referenced herein that I did not personally witness were relayed to me in oral and/or written reports by agents of the FBI or other agencies. All figures, times, and calculations set forth herein are approximate. Unless otherwise specified, weights of controlled substances are approximately and are based on gross measurements.

### AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

7.      I am a Special Agent with the FBI and have been a sworn law enforcement officer for approximately 13 years, serving as a police officer and FBI Special Agent. I have been with the FBI since 2018 and am currently assigned to the Safe Streets High Intensity Drug Trafficking Area Gang Task Force (SSGTF). As a member of the SSGTF, I investigate violent gangs who are primarily comprised of violent repeat offenders engaged in narcotics trafficking, federal firearms violations, and other violent crime.

8.      My investigative training and experience includes, but is not limited to, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, collecting evidence, conducting surveillance, and analyzing public records. Over the course of my career, I have arrested hundreds of persons for offenses relating to armed robberies, firearm violations, bank robberies, illegal narcotics, and other criminal conduct. I have also been responsible for serving subpoenas and supervising cooperating sources, as well as analyzing phone records.

9.      Through my training and experience, I am familiar with the methods and means used by individuals, drug trafficking organizations ("DTO"s), and gang/criminal enterprises to purchase, transport, store, and distribute controlled substances. I am also familiar with how those individuals and organizations utilize cell phones similar to the TARGET PHONE to facilitate their drug trafficking ventures.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

10.     Through my training and experience, I am aware that drug traffickers and DTO's utilize cell phones similar to the TARGET PHONE to conduct their business, access bank accounts and/or transfer money, to advertise their product, communicate with sources of supply and would be buyers. I know that cell phones, similar to the TARGET PHONE, are used by individuals, DTO's, and gang/criminal enterprises to conduct their business. It has been my experience that the items I have described herein are often stored by individuals involved in drug trafficking in their cellular telephones and electronic devices similar to the TARGET PHONE.

11.     I have observed persons involved in drug trafficking use messaging applications and pre-paid phones requiring no subscriber information, and even use fictitious names, or the names of others, to register the cellular phones used to advance their unlawful activities. These cellular phones often contain names and phone numbers of other co-conspirators, text messages utilized to further illicit activities, photographs and videos of controlled substances, drug proceeds, and/or firearms. Additionally, I am also familiar with the increasingly popular use of text messaging, instant messaging, electronic mail, and smartphone applications like Facebook and Snapchat used by gang/criminal enterprises and DTOs to advance their unlawful activities.

12.     Based upon my training, experience, and participation in the investigation of gang/criminal enterprises and DTOs, I am aware individuals engaged in drug distribution often utilize cellular telephones, such as the TARGET PHONE, to maintain documents and records relating to their distribution activities. This documentary evidence includes, but is not limited to, telephone numbers, telephone books, address books, travel receipts, records in fictitious or coded names, false identification, financial records, money order receipts, money remittance receipts, money collection logs, such as "tally" sheets, drug load sheets, or shipping/mailing receipts.

13.     I know that firearms are tools of the trade and instrumentalities of the crime of drug

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

trafficking, particularly in instances involving subjects who have committed prior violent crimes and/or firearms violations. Based on my training and experience, these individuals utilize cellular telephones similar to the TARGET PHONE as a means to facilitate the illegal purchase and sale of firearms.

14.     I am aware that members of DTOs often maintain records of their transactions in manners similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, especially when debts remain open; the status of accounts receivable and accounts payable; the names and phone numbers of suppliers, customers, co-conspirators, and other associates who may assist drug traffickers in other ways, such as helping with the cleansing of otherwise "dirty" money (U.S. currency derived from drug trafficking), through a variety of means, including investments into legitimate enterprises and structuring deposits of large amounts of U.S. currency into financial institutions in such a way so as to avoid the detection of law enforcement, and any reporting requirements of banking institutions. These records can be maintained on cellular phones similar to the TARGET PHONE in the form of business and personal ledgers and diaries, calendars, memoranda, pay-owe sheets (drug ledgers), IOU's, miscellaneous notes, money orders, customer lists, and phone address books.

15.     Based on my training and experience, I know that drug traffickers often utilize cell phones, similar to the TARGET PHONE, as a means to facilitate drug trafficking operations. I also know that drug traffickers often own and utilize multiple cell phones, phone numbers, and smartphone applications in an attempt to avoid detection by law enforcement.


FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

16.     During the course of this investigation, FBI case agents utilized a Confidential Human Source (CHS) to infiltrate and report on SAUCEDO. I have provided an overview of the CHS to include their basis of knowledge concerning the criminal conduct, motivation to assist the FBI, criminal history, any compensation received from the government, and a statement concerning their reliability. I have tried to provide sufficient information to the Court, while balancing the anonymity and safety of the source.

17.     The CHS is an experienced gang member and is familiar with drug trafficking methods. Over the past two years, the CHS has participated in controlled operations to assist various FBI investigations targeting violent crime and Albuquerque drug traffickers. Information provided by the CHS contributed to the issuance of four search warrants, the arrest of two subjects, and the recovery of firearms, ammunition, U.S. currency, and significant quantities of controlled substances. The CHS is motivated to assist the FBI in anticipation of receiving a positive recommendation in a pending criminal matter. The CHS has prior felony convictions for burglary, conspiracy to commit burglary, aggravated burglary, resisting an officer, unlawful taking of a motor vehicle, and receiving stolen property. The CHS has received no monetary compensation for their assistance from the FBI. I consider the information the CHS provided to be reliable because much of it was corroborated through law enforcement investigation, controlled buys, and physical surveillance. To my knowledge, the CHS's information has not been found to be false or misleading

### PROBABLE CAUSE

18.     The FBI is conducting a criminal investigation of Carlos SAUCEDO regarding violations of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. §§ 922(g)(1) and 924.

19.     I have reviewed SAUCEDO's criminal history, and I am aware that he is a

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

convicted felon and currently on parole through the New Mexico Department of Corrections for case number D-202-CR-2017-04103. I am aware that SAUCEDO was convicted of the following felony offenses: armed robbery and kidnapping in case number D-202-CR-2014-02014; and possession of a firearm by a convicted felon and possession of a controlled substance in case number D-202-CR-2017-04103.

20.    According to intelligence received from MDC, SAUCEDO is listed as a JMV gang member. On January 22, 2022, Strategic Threat Intelligence Unit ("STIU") investigators at MDC advised FBI Special Agent Jordan Spaeth that SAUCEDO, a.k.a. "SMASH," had posted to Facebook a picture of himself throwing JMV gang signs, picture below. Below is a post to Carlos SAUCEDO's, a.k.a. "SMASH," Facebook profile on June 28, 2013:





21.    During the course of the investigation, the CHS advised that they believed SAUCEDO sold methamphetamine, fentanyl M-30's, and had firearms.

22.    During the week of February 21, 2022, the FBI CHS placed a call to SAUCEDO,

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

who advised he was not home, but would be home shortly; SAUCEDO agreed to sell the CHS an amount of fentanyl M-30's and methamphetamine. SAUCEDO advised the CHS to meet at his (SAUCEDO's) house. SAUCEDO used and answered (505)364-7954, which was later determined to be the TARGET PHONE.

23.    On the same day, agents met the CHS at a predetermined location where agents searched the CHS, their vehicle, provided them with a recording device and an amount of U.S. currency. Surveillance was maintained on the CHS, who drove to SAUCEDO's residence and parked at the entrance to the trailer park, which is approximately 50 yards from SAUCEDO's residence, and waited for SAUCEDO. Surveillance units observed the purple Chevrolet Impala drive into the trailer park and approximately 20 minutes later the vehicle exited the trailer park and met with the CHS, who remained in his vehicle. SAUCEDO provided the CHS with an amount of methamphetamine and fentanyl M-30 tablets in exchange for an amount of U.S. Currency in official government funds. Surveillance was maintained on the CHS while they drove to a predetermined location, there the CHS provided agents with the methamphetamine and fentanyl M-30's. The recording device was recovered, agents again searched the CHS and their vehicle with negative contraband located. The fentanyl and methamphetamine later field tested positive for methamphetamine.

24.    The following week, SAUCEDO utilized the TARGET PHONE and told the CHS that he (SAUCEDO) had just picked up more than five thousand fentanyl M-30 tablets.

25.    Also, the FBI CHS spoke with SAUCEDO, who again utilized the TARGET PHONE, and SAUCEDO agreed to sell the CHS methamphetamine.

26.    On March 4, 2022, agents executed a search warrant at SAUCEDO's residence. SAUCEDO was at the residence along with the TARGET PHONE, which was located within the

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

vicinity of SAUCEDO. The only other occupant was SAUCEDO's grandmother, who stated the TARGET PHONE did not belong to her. SAUCEDO advised agents that he did not know who owned TARGET PHONE. SAUCEDO had another phone in his pocket and denied knowledge of the TARGET PHONE, however the TARGET PHONE was fully charged, had cellular service, was in working order, and was locked. Agents later called the number which SAUCEDO previously spoke with the CHS to coordinate narcotics sales and the TARGET PHONE rang.

## TECHNICAL TERMS

27.     Based on my training and experience, I use the following technical terms to convey the following meanings:

28.     Cellular telephone: A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.

29.     Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

30.     Portable media player: A portable media player (or "MP3" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

31.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

32.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as a wireless communication device and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

33.    IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of numbers separated by periods (e.g., 121.56.97.178). Every device attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some devices have static – tat is, long-term – IP addresses, while other computers have dynamic – that is, frequently changed – IP addresses.

34.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

35.    Based on my experience, I know that the TARGET PHONES have the capability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device,

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

and PDA. In my experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36.     Based on my knowledge and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensic tools.

37.     Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET PHONES were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET PHONES because:

38.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

39.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

40.     A person with appropriate familiarity with how electronic devices and electronically stored information work may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices and electronically stored information were used, the purpose of their use, who used them, and when.

41.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

evidence is not always data that can be merely reviewed by a review team and passed along to investigators. For example, whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

42.     Further, in finding evidence of how a device and electronically stored information were used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

43.     Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Phone consistent with the warrant. The examination may require authorities to employ specialized techniques, including but not limited to computer-assisted analyses, that might expose many parts of the Account to human inspection in order to determine whether it is evidence described by the warrant.

44.     Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

45.     Based on the information contained herein, I submit there is probable cause for a search warrant authorizing the examination of the TARGET PHONE described in Attachment A to seek the items described in Attachment B for evidence pertaining to violations of 21 U.S.C. §§

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

841(a)(1), 846, and 18 U.S.C. §§ 922(g)(1) and 924. This affidavit was reviewed by Supervisory

Assistant United States Attorney Jack Burkhead.

Respectfully submitted,

Jordan Spaeth
FBI Special Agent

Subscribed telephonically and sworn electronically on March 17, 2022.

HONORABLE B. PAUL BRIONES
UNITED STATES MAGISTRATE JUDGE

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

## <u>ATTACHMEHT A</u>

**Property to Be Searched**

The property to be searched is the following cellular telephone: a black LG cellphone, with International Mobile Equipment Identity (IMEI) 355041-61-706866-8 (recovered from Carlos SAUCEDO). The cellular telephone listed above is hereinafter referred to as the "TARGET PHONE."

The TARGET PHONE is currently in FBI possession. This warrant authorizes the forensic examination of the TARGET PHONE for the purpose of identifying the electronically stored information described in Attachment B.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## ATTACHMENT B

### Property to Be Seized

1. The property to be seized includes all records on the TARGET PHONE described in Attachment A that relate to violations of Title 21 U.S.C. §§ 841(a)(l) and 846, and Title 18 U.S.C. §§ 922(g)(1) and 924, that is distribution and possession with intent to distribute controlled substances and conspiracy thereto, and possession of a firearm and ammunition, and involve Carlos SAUCEDO, including:

a. Any communication and information related to controlled substances;

b. Any communication and information related to the manufacture and/or distribution of controlled substances;

c. Lists of drug trafficking customers and related identifying information;

d. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

e. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

f. All bank records, checks, credit card bills, account information, and other financial records;

g. Any information related to firearms; and

h. Any information related to gang/criminal enterprises.

2. Evidence of user attribution showing who used or owned the TARGET PHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

3. As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.